ANNIE B. SCHMIDT v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

Division Two, November 21, 1905.

1. **CONTRIBUTORY NEGLIGENCE: Proximate Cause of Injury.** Although the engine and train which struck deceased was running at a greater rate of speed than that permitted by ordinance, the conduct of defendant being, therefore, negligence *per se*, yet, if the contributory negligence of the deceased was clearly the proximate cause of the injury, the court should sustain a demurrer to the evidence.

2. ———: ———: **Not Looking.** Notwithstanding the train which struck deceased was running within the city limits at the rate of twenty or twenty-five miles an hour, yet if a pedestrian approaching a crossing could easily have seen it and his injury thereby have been averted, had he looked, and the evidence

clearly shows, without conflict, that he failed to do so, but without either looking or listening, stepped upon the track immediately in front of the on-coming train, his act was the proximate cause of his death, and his widow cannot recover, and the court should have sustained a demurrer to the evidence.

3. ————: **Measure of Precaution.** The measure of precaution to be observed by a traveler approaching a railroad track, depends often upon the circumstances and surroundings.

4. ————: ————: **Neither Looking nor Listening.** The general rule is that a traveler knowingly approaching a railroad track must use his sense of sight or hearing to ascertain if there is danger. The circumstances may not require that he both look and listen. But common prudence requires that he do the one or the other, and if he cannot hear, that he look. And a failure to do so, is negligence on his part.

5. ————: ————: **Abrogated by Ordinance.** A violation by the railroad company of the city ordinance prescribing a maximum rate of speed for trains, does not abrogate the rule of law requiring one approaching a railroad track to exercise ordinary care to avoid injury. Nor does it shift responsibility to the company if injury ensues from the failure of the traveler to exercise that care.

6. ————: **Defective Hearing.** Where deceased was more deaf than the ordinary person, but not so deaf that he could not hear if the person to whom he was talking spoke a little loud, it will be assumed that he could have heard the danger signal sounded within 120 feet of him and the ringing of the bell.

7. ————: ————: **Not Looking.** But conceding that he was too deaf to hear the danger signal, no one was more cognizant of that fact than he, and if, knowing that, and possessing good eyesight and a good mind, he failed to look, when by doing so he could easily, while yet in a place of safety, have seen the on-coming train in time to have avoided the accident, the company is not liable for his consequent death.

8. ————: ————: ————: **Proof.** The fact that a traveler, possessed of good eyesight and good mind, steps upon a railroad track immediately in front of an on-coming train, where the view was unobstructed for at least 250 feet, is proof that he did not look or was bent on suicide.

9. ————: **Presumption of Care.** The presumption that a traveler approaching a railroad track was in the exercise of ordinary care, is overcome by the uncontradicted evidence that he was not.

10. ———: ———: **Presumption Indulged by Engineer.** Where the engineer did not see a mature man approaching the track near a crossing until he was within 180 or 190 feet of him, and he then sounds the danger signal, the view being unobstructed and the time broad daylight, he had the right to presume that the traveler would stop and not take the few steps which would bring him immediately in front of the on-coming train.

11. **NEGLIGENT SPEED: Recklessness.** Where the train was running on schedule time, and the rate was that usually maintained at the point, though in excess of the maximum rate permitted by ordinance, and the engineer and fireman were both at their posts, and sounded the station whistle and a danger signal on seeing a pedestrian approaching a crossing, and the brakes had been set and the speed lowered as the train approached the station, and the bell was being rung, the time being broad daylight, it cannot be held that they failed to discover the traveler's danger through carelessness or recklessness, although the rate was twenty or twenty-five miles an hour. [Distinguishing Harlan v. Railroad, 65 Mo. 22.]

Appeal from Cole Circuit Court.—*Hon. Jas. E. Hazell,* Judge.

REVERSED.

*M. L. Clardy* and *Wm. S. Shirk* for appellant.

The court erred in refusing to grant defendant's demurrer, at the close of plaintiff's evidence, and in refusing to peremptorily instruct the jury to find for the defendant at the close of all the evidence. (a) There is no dispute as to these facts, viz., that when Schmidt was at a point twenty feet south of where he was struck, he could have seen the train coming toward him, at least two hundred and fifty feet. (b) The undisputed evidence shows that Schmidt walked this twenty feet across two side tracks and on up to the main track, and that he stepped upon the main track, without, for a moment, even looking or listening for the coming of a train, and this, too, in the face of the fact that he was hard of hearing. (c) He stepped upon the track immediately in front of the engine, which he must have

seen if he had looked, and must have heard even as deaf as he was, if he had paid any attention whatever to his surroundings. He was therefore guilty of such contributory negligence as bars him from a recovery. Wands v. Railroad, 80 S. W. 18; Moore v. Railroad, 176 Mo. 528; Carrier v. Railroad, 175 Mo. 470; Guyer v. Railroad, 174 Mo. 344; Van Bach v. Railroad, 171 Mo. 338; Hook v. Railroad, 162 Mo. 569; Sharp v. Railroad, 161 Mo. 214; Tanner v. Railroad, 161 Mo. 497; Vogg v. Railroad, 138 Mo. 180; Maxey v. Railroad, 132 Mo. 1; Mirrielees v. Railroad, 163 Mo. 470; Elliott on Railways, sec. 1166, and note p. 1776; Kelsay v. Railroad, 129 Mo. 362; Hayden v. Railroad, 124 Mo. 566. The rule has always been that "a person who goes upon a railroad track, or proposes to cross it, must use his eyes and ears to avoid injury, and must be vigilant and watchful of the approach of a locomotive. The failure to exercise such vigilance is negligence *per se.*" Harlan v. Railroad, 64 Mo. 480; Butts v. Railroad, 98 Mo. 272; Weller v. Railroad, 120 Mo. 635; Boyd v. Railroad, 105 Mo. 371. (d) Schmidt's negligence in not looking or listening for a train before he stepped on the track is emphasized by the fact that the whistle was not only sounded for the station and crossing, but when he was discovered approaching the track an alarm whistle was sounded. The bell was also kept ringing until after he was struck. The fact that he was partially deaf does not excuse him—he was for that reason bound to be more diligent in looking. Purl v. Railroad, 72 Mo. 168; Zimmerman v. Railroad, 71 Mo. 476; Fusili v. Railroad, 45 Mo. App. 535. (e) Schmidt stepped upon the track immediately in front of the engine. Just one step from the south side of the track to the middle of the track brought him in collision with the engine. It is therefore self-evident that he did not look west at all, for to look was to see the engine coming toward or rather upon him. Hayden v. Railroad, 124 Mo. 566; Kelsay v. Railroad, 129 Mo. 362. (f) The engineer was not

bound to slow up his engine or try to stop it, until he saw him in a position of danger. He had a right to presume that Schmidt, being in full sight of his train, would not step upon the track in front of it. Guyer v. Railroad, 174 Mo. 344; Reardon v. Railroad, 114 Mo. 384; Bell v. Railroad, 72 Mo. 50; Maloy v. Railroad, 84 Mo. 270; Bunyan v. Railroad, 127 Mo. 12. (g) It devolved upon the plaintiff to show that the rate of speed in excess of five miles per hour, was a direct cause of the accident. This plaintiff not only failed to do, but to the contrary the defendant affirmatively showed by undisputed evidence that the train could not have been stopped in time to avoid striking Schmidt after the engineer discovered him in peril, if it had been running only five miles per hour, or even three. Fox v. Railroad, 85 Mo. 679; Taylor v. Railroad, 86 Mo. 457; Payne v. Railroad, 136 Mo. 562; Hook v. Railroad, 162 Mo. 569; Schmitt v. Railroad, 160 Mo. 43. And the fact that the train was running at a rate of speed prohibited by ordinance did not absolve Schmidt from the duty to look and listen for the coming of a train. The rule as to contributory negligence is not abrogated by reason of a violation of an ordinance as to speed. Weller v. Railroad, 120 Mo. 635; Duncan v. Railroad, 46 Mo. App. 198; Baker v. Railroad, 122 Mo. 533; Payne v. Railroad, 136 Mo. 562; Prewitt v. Eddy, 115 Mo. 283.

*Silver & Brown* for respondent.

(1) A rate of speed over twenty-five miles an hour in a populous neighborhood of a city is too great, and rebuts any presumption of negligence on the part of the party run over and killed by the train while attempting to cross the street. Hagan v. Railroad, 5 Phila. 179. To run a train at a rapid rate of speed across a public street in a city or town is prima facie willful negligence. Eskridge v. Railroad, 89 Ky. 367. Willful negligence held to be ''where the conduct of a party

in fault was such as to evidence reckless indifference to the safety of the public or the intentional failure to perform a plain and manifest duty in the performance of which the public and the party injured had an interest.'' And in such case the defense of contributory negligence is not well taken. Where it appears that a person was killed at a crossing by a train running at a prohibited rate of speed, and that he could have had time to cross in safety had the train been running at a lawful rate of speed, the unlawful speed may be considered the proximate cause of the accident. Winstanly v. Railroad, 72 Wis. 375. The fact that a railroad company has not been prosecuted for repeated violations of a city ordinance limiting the speed of trains, does not tend to prove that such ordinance has been abandoned and become obsolete, and constitutes no defense to an action against such company for injuries caused by its negligence in running its trains at an excessive rate of speed. The court will not undertake to say to the jury just how many feet from a railroad track a person approaching a crossing should look for approaching trains before attempting to cross such track, but will leave that question to the jury. What the law requires, and all it does require, is that a person approaching a railroad crossing upon a public highway shall use ordinary care to avoid injury. ''In the absence of evidence to the contrary, we think the appellee had the right to presume that the appellant would obey the city ordinance and would not run its trains at a greater rate of speed than four miles an hour at the point where the injury occurred, and while the wrongful conduct of the defendant in this regard would not excuse plaintiff from the exercise of reasonable care, yet in determining whether she did exercise reasonable care she is to be judged in the light of such presumption.'' Railroad v. Harrington, 131 Ind. 432. ''The place at which one should look and listen is for the jury.'' Railroad v. Turner (Ind.), 69 N. E. 484;

Railroad v. Kean, 65 Md. 394; Tuff v. Warman, 5 C. B. N. S. 585; Chesholm v. Electric Co., 24 A. & E. Ry. Cases, 635. "Travelers have a right to expect that railroad trains will be managed in conformity to law, including statutes and ordinances, and they are generally not negligent in acting upon the assumption that the speed will be limited or signals given as required by law." Shearman & Redfield on Negligence (5 Ed.), sec. 473. "Before the court will be justified in taking from the jury a question of contributory negligence, the acts must be so palpably negligent that there can be no two opinions concerning them." Bunan v. Electric Company (Wash.), 67 Pac. 214; Railroad v. Garvey, 108 Pa. St. 369; Ayres v. Railroad, 201 Pa. St. 127; 2 Thompson on Negligence (2 Ed.), sec. 1448, citing Metropolitan Ry. Case, 13 App. D. C. 370, and Lang v. Huston, 75 Hun 151; Railroad v. Lowe, 73 Miss. 203; Umley v. Railroad, 92 Iowa 622. Same doctrine in substance announced in the following cases in this court: Kenney v. Railroad, 105 Mo. 288; Jennings v. Railroad, 112 Mo. 268; Easley v. Railroad, 113 Mo. 237; Gratiot v. Railroad, 116 Mo. 450. Also in: Plummer v. Railroad, 73 Me. 593; Chaffee v. Railroad, 104 Mass. 108; Williams v. Grealy, 112 Mass. 79; Thompson v. Railroad, 110 N. Y. 636; Smith v. Railroad, 158 Pa. St. 84; Hicks v. Railroad, 167 Mass. 427; McGrew v. Railroad (Tex.), 74 S. W. 818. (2) This case really falls within the doctrine of the old case of Harlan v. Railroad, 65 Mo. 22. The doctrine of that case is cited with approval in the later case of Morgan v. Railroad, 159 Mo. 278, and a number of other cases. Fearons v. Railroad, 180 Mo. 208; Werner v. Railroad, 81 Mo. 374; Rine v. Railroad, 88 Mo. 400; Dlauhi v. Railroad, 139 Mo. 296. The doctrine of the Harlan and other cases referred to is that notwithstanding the contributory negligence of the deceased, the railroad will be liable for his death "if the company failed to discover his danger through the recklessness or carelessness of its employees, when the ex-

ercise of ordinary care would have discovered the danger and averted the calamity.'' It is very clear that the jury were warranted in inferring from the evidence in this case that if defendant's engineer had observed the speed ordinance, and had the train been running within the rate of speed limited by it, he could easily have checked the speed after he saw the peril of the deceased, and could have averted his death. Holden v. Railroad, 177 Mo. 56; Sluder v. Railroad, 189 Mo. 107; Riska v. Railroad, 180 Mo. 168; Heim v. Railroad, 90 Mo. 321; Prewitt v. Railroad, 134 Mo. 627; Peterson v. Railroad, 156 Mo. 560; Petty v. Railroad, 88 Mo. 308; Railroad v. McDonald, 43 Md. 534. ''A jury may infer ordinary care and diligence on the part of an injured person from the love of life, the instinct of self-preservation, and the known disposition of men to avoid injury.'' Railroad v. Gallager, 68 Kan. 427. ''A man may cross an electric street railway track in front of an approaching car which he plainly sees and distinctly hears and not be negligent. Hundreds of people do so every day, yet satisfy every demand for care and caution which the law imposes on them. The requirement of the law that a man shall look and listen means no more than that he shall observe and estimate with reasonable accuracy his distance from the car and the speed of its oncoming.'' Railroad v. Gallager, 68 Kan. 428; Schafstette v. Railroad, 175 Mo. 142. The foregoing doctrine is generally applied to steam railways and has so been applied in this State. Hutchinson v. Railroad, 161 Mo. 254; Gratiot v. Railroad, 116 Mo. 464. (3) ''A negligent act will not be excused by the fact that it is customary.'' Anderson v. Felding, 92 Minn. 45. Habitual violation of an ordinance regulating the speed of trains does not relieve a railroad company from the imputation of negligence. Martin v. Railroad, 118 Iowa 148.

GANTT, J.—This is an action for statutory damages for the killing of George E. Schmidt by a train of the Missouri Pacific Railway Company at a crossing in Jefferson City, Missouri.

The grounds of negligence alleged in the petition are four: First, that the defendant ran its locomotive and train of cars which struck and killed the plaintiff's husband at an immoderate and excessive rate of speed over the public crossing, upon which crossing the plaintiff's husband was struck and killed; second, that the defendant ran its locomotive and train of cars in excess of five miles per hour, in violation of the city ordinance of said city; third, that the defendant failed to keep a proper lookout for pedestrians at the crossing on which plaintiff's husband was struck; fourth, that the defendant failed to so manage and control its said train and the speed thereof as to stop said train in time to prevent injury to plaintiff's husband.

The answer denied each and every allegation of the petition, and pleaded contributory negligence on the part of the plaintiff's husband.

The trial resulted in a verdict and judgment for the plaintiff for the statutory sum of five thousand dollars. Motions for new trial and in arrest of judgment were duly filed and overruled and the defendant appeals to this court.

The evidence on behalf of the plaintiff tended to prove the following facts:

That at a point about 118 feet east of the bridge pier of the Missouri river bridge in Jefferson City, the defendant company has four tracks, namely, two side-tracks south of the main track, then a main track, and then another side track north of the main track; that it is about 18 or 20 feet from the northernmost of the south side tracks to the main track; that at the place here referred to, the defendant had for some time prior to the death of plaintiff's husband maintained a crossing for vehicles and pedestrians, and that this cross-

ing led down from Bolivar street on the south over defendant's track to a landing on the Missouri river. What is called Bolivar street road branches off from Bolivar street proper on the east side of the retaining wall or approach to the bridge, leaving the street about 200 feet south of the bridge proper and veering to the east until it crosses the railroad tracks 118 feet east of the bridge. At the point where the deceased was struck, the wagon road, known as the Bolivar road, is about 90 feet east of the east line of Bolivar street.

A plat introduced in evidence, and which accompanies this opinion, shows a dotted line from the south end of the ties to the south track which has a line of vision looking westward past the bridge pier. From this point at the south end of the ties of the south track, one can look west past the bridge pier and see a train coming from the west 250 feet, and when going north over this crossing towards the main track, could see still further west as he moves north. As to these facts there seems to be no conflict.

The evidence of the plaintiff tended further to show that shortly after two o'clock p. m. of August 26, 1902, George Schmidt, plaintiff's husband, was observed by Gustave Reinke, the bridge tender of the Missouri river bridge at the toll house at the bridge, coming down Bolivar street from the south towards the bridge. Reinke saw Mr. Schmidt coming probably 150 yards away, and thought he was coming to the toll ·house to speak to him, Reinke, but when the deceased reached the south end of the retaining wall, he left Bolivar street proper and went down the wagon road, known in the evidence as Bolivar street road, that runs across the railway tracks at the crossing above mentioned. Mr. Schmidt continued down this wagon road and while he was doing so an omnibus came across the bridge and Reinke became engaged in collecting the toll, and when he went into the toll house with his money and tickets he heard the whistle of the train which killed the deceased and also heard an alarm whistle almost under the bridge. Happening to see the old man, he ran out of the toll house across the roadway of the bridge to the east wall thereof, and looked down east from the bridge to this Bolivar street crossing. By this time, he says, Mr. Schmidt had approached a point with in a step or two of the main line; he had already crossed the two south side tracks, walking diagonally and was close to the main track. Reinke waved his hand at him

trying to attract his attention. Mr. Schmidt could not hear him as Reinke knew. Mr. Schmidt was walking with a cane and looking a little east in the direction of a boat on the river a little east of north. Reinke did not see him look up towards the west, the direction from which the train was coming, at all; the deceased was not looking towards the west when he stepped on the main track. When in the middle of the track and just as the engine struck him, it seemed to Reinke as if Mr. Schmidt wanted to look, as though he felt a jar or something, but the engine struck him before he could look. The evidence tended to show that the train was moving at a rate of over twenty-five or thirty miles an hour; that the body of the deceased was hurled by the collision about one hundred feet. No other witness for the plaintiff discloses the movements of the deceased prior to and just at the time of the happening of the catastrophe.

For the defendant, the engineer, Allen Taylor, testified that his train was running at the time it struck the deceased somewhere between twenty-five or thirty miles an hour; that he could see the crossing on which deceased was struck, 250 yards before he reached it; that he was at his place on his locomotive looking forward at the crossing and on the track to see if there was anything in the way; that when witness first saw the deceased, he was fifteen or eighteen feet from the track; that the train was then 175 or 180 feet from the deceased, and that deceased was not looking either way, he was looking down, shaking his head and appeared to be feeble, had his head down as though he was looking on the ground in front of him; that if his train had been running at five miles an hour, he could have stopped it within twenty-five yards; that when he first saw Schmidt approaching the track he blew the alarm whistle three or four sharp blasts. He had already applied the break as he always did coming around the bluff at that point; that his engine was close on to

Schmidt before he became convinced that he was going to step on the track; that after he gave the alarm whistles, two steps brought the deceased in danger, and the engineer then made every effort to stop; that the old man stepped right in front of the engine, and he and the engine met on the track.

There was evidence that the train could have been stopped if running at a rate of five miles an hour in a distance of 45 to 60 feet.

Swayze, the fireman, testified that he saw the deceased before he was struck; that the deceased was then about two or three steps from the track, walking towards it, was looking down on the ground ahead of him.

Otto Fleming testified that he was sitting on the north steps of the State capitol; that he heard the whistle when the train was beyond the bridge, as it was coming from the west around the bluff; that when the train was about under the bridge he heard a short danger signal; that he noticed the deceased coming down the roadway leading to the crossing, and saw him pass over the side tracks; that he then walked over between the main line and the side track and stopped, and then stepped over on the ties with his right foot, and then stepped to about the middle of the tracks with his left foot and was struck by the train.

H. D. Chambers testified, for the defendant, that he saw the deceased about twenty feet from the track going right down towards the crossing; that witness' attention was withdrawn from the deceased until he heard the alarm whistle, when he looked again and at this time the deceased was stepping right over the track when the engineer blew his whistle.

The ordinance of the City of Jefferson prohibiting a locomotive, engine, passenger or freight car upon or along any railroad track within the limits of said city to run at a greater rate of speed than five miles an hour, was introduced in evidence. It was also admitted that Jefferson City is a city of the third class and has been

since January 3, 1887. There was evidence that Mr. Schmidt was somewhat hard of hearing, though he could hear a conversation if one spoke loudly to him.

While the plaintiff did not seek to recover on the ground that the whistle was not sounded or the bell not rung, the affirmative evidence, both for the plaintiff and the defendant, tended to show that the whistle for the station was sounded near a quarter of a mile west of the place of the accident and the alarm whistles were sounded at or near the bridge some 118 feet west of the place of the accident and that the bell was rung until after the deceased was struck. Other facts may be noted in the course of the opinion as well as the instructions of the court.

I. The pivotal point upon which this case must turn is, did the circuit court err in overruling the demurrer to the evidence? That the train was running in excess of the rate of speed prescribed by the ordinance of Jefferson City is conceded and established by the testimony of the defendant's own engineer and fireman, as well as that of the plaintiff's witnesses. Such conduct on the part of the railway company was negligence *per se*, but notwithstanding this neglect of the regulations in regard to the running of trains within the city limits on the part of the railroad employees, the question still remains, was not the deceased's own contributory negligence the proximate cause of his death?

It is a settled law of this State that a person who goes upon a railroad track or proposes to cross it, must use his eyes and ears to avoid injury. And while a neglect of the regulations in regard to the running of trains amounts to negligence in law on the part of the railway company, this does not absolve pedestrians and others who propose to cross the tracks from the exercise of ordinary care. Every intelligent person who has arrived at years of discretion, is presumed to know that it is dangerous to be upon a railroad track when trains are passing to and fro, and when crossing one, he is

expected to be vigilant and watchful of the approach of the locomotive. The failure to exercise such vigilance is negligence *per se.* [Harlan v. Railroad, 64 Mo. 482.]

The law that a traveler, before entering upon a railroad track, must observe some caution for his own safety, and that a failure to do so will be such negligence as will preclude a recovery in case of injury, is as well settled in this State as is the law that a railroad company is guilty of negligence in running a train without observing the reasonable precaution required by law or ordinance. The measure of precaution to be observed by a traveler depends often upon the circumstances and surroundings. The general rule is that in knowingly approaching the track of a railroad, he must use his sense of sight or hearing to ascertain if there be danger. If the view is so obstructed that he cannot see, he should carefully listen. The circumstances may not require that he both look and listen, but common prudence requires that he do either one or the other, and a failure to do so renders his act negligence in law. The rule of contributory negligence is not changed or abrogated by reason of a statute or ordinance imposing the duty on account of the violation of which the injury resulted. [Weller v. Railroad, 120 Mo. 653.] The statute does not absolve persons approaching a public railway crossing from exercising common prudence to avoid danger, nor shift the responsibility to another should injury ensue from the failure to exercise it. [Kenney v. Railroad, 105 Mo. 284.]

In view of these settled principles of law in this State, was the plaintiff's husband, George Schmidt, guilty of such contributory negligence as must bar the plaintiff from a recovery in this action? Mr. Schmidt was a man of mature years, of sound mind and of good eyesight, though somewhat hard of hearing; he was an old citizen of Jefferson City, and resided only a few blocks from the track on which he was killed. He approached the track of the defendant for the purpose of crossing

the same a little after two o'clock in the afternoon of
August 26, 1902. It was a clear summer afternoon, and
he was walking. The train which struck him was a
regular passenger train, bound east from Kansas City
to St. Louis, and was due at Jefferson City about 2:20
p. m. that day. It was on time, and when it reached a
point some three or four hundred yards west of the
crossing on which plaintiff's husband was killed, a sig-
nal whistle was sounded by the engineer. As the train
approached the station at Jefferson City it rounded a
slight curve at the bluff on which the Jefferson bridge
over the Missouri river rests as it enters Bolivar street
in said city. It is an undisputed fact that when Mr.
Schmidt reached a point 20 feet south of where he was
struck, by looking west, the direction in which the train
was coming, he could have seen the train moving toward
him, at least 250 feet. And as he walked northward to-
ward the main track on which he was struck, he could
have constantly seen a train even at a greater distance.
The witnesses estimated that by the time he reached the
south end of the ties of the track upon which he was
struck, he could have seen the train 350 feet away and
there was nothing intervening to obstruct his view had
he looked west at that time. Plaintiff's own witness,
Mr. Reinke, testified that after he heard the crossing
signal and the alarm whistles, he went out of the toll
house at the south end of the bridge, which was but a
few feet south of the railway company's tracks which
run under the south end of the bridge at this point, and
looking down toward the crossing over which Mr.
Schmidt was walking to cross the track, and when he
saw him, he had already crossed the two side tracks
south of the main track and was still a step or two from
the main track. He was walking with a cane, down to-
wards a boat that was moored on the bank of the river,
a little east of north, and was looking in the direction
of the boat and did not look west toward the approach-
ing train, but stepped on the middle of the main track

immediately in front of the approaching engine; that there was nothing in the way of an obstruction to have prevented Mr. Schmidt from seeing the train 250 feet from the point where he was after he saw him, before stepping upon the track; he could have seen the train approaching before it got to the bridge. The witnesses for the defendant, the engineer, the fireman, and Mr. Fleming, all corroborated Mr. Reinke in saying that the deceased walked upon the track upon which he was struck without looking in the direction from which the train was coming. And they all corroborate him as to the sounding of the crossing signal and the alarm whistles before or about the time the train passed under the bridge. That Mr. Schmidt, if he had looked, must have seen the train approaching him before he stepped upon the track, is a self-evident fact in the circumstances detailed by all the witnesses to this unfortunate and lamentable catastrophe, and unless we are to disregard the unbroken line of decisions by this court on this question, he was guilty of such negligence in the circumstances as must bar the plaintiff's recovery, notwithstanding the fact that the train was running in excess of the rate of speed prescribed by the ordinance. Nor does the evidence as to his deafness mitigate his negligence, because if, as the witnesses testified, he was not so deaf that he could not carry on an ordinary conversation if the person he was talking to would speak a little loud, if his deafness was not greater than this, it is difficult to conceive how he could have failed to have heard the sharp shrill danger signals which all the witnesses agree were sounded not more than 120 feet from him, or have failed to have heard the ringing of the bell on the engine. But granting he was so deaf that he could not hear these signals, still his negligence is not excused, because if so deaf, no one knew it better than himself. This defect of hearing of which he was cognizant, and which was unknown to the employees in charge of the train, should have added a spur to his

vigilance and prompted him to have employed his eye-sight so as to compensate as far as possible for the lack of hearing. [Purl v. Railroad, 72 Mo. l. c. 172.]

In view of the time of day, the absence of any obstruction for at least 250 feet in the direction from which the train approached him, and the fact that Mr. Schmidt was shown to have been a man with good eyesight, it must be held to have been a physical impossibility for him to have failed to have seen the approaching train, if he had looked in that direction, in sufficient time to have enabled him to have refrained from stepping upon the track in front of it and while yet in a place of safety.

The learned counsel for the plaintiff invokes the presumption of due care on the part of the deceased. As we said in Lynch v. Railroad, 112 Mo. l. c. 433, "presumption is a principle of law, by which, for the furtherance and support of right, facts not established by positive evidence are inferred from circumstances." [Mathews on Presumptive Evidence, 1.]  To indulge the presumption in this case that Mr. Schmidt used due care and looked west for the approaching train before stepping on the main track, would be a contradiction of the plaintiff's evidence that he was a man of good eyesight.  If he had looked west he could not have failed, while he was yet in a place of safety, to have seen the approaching train, and had he done so there can be no question, as he was shown to have been a man of bright mind, that he would have stopped and permitted the train to have passed him and then crossed over in safety.  The very fact that he did step upon the track immediately in front of the approaching engine and was struck instantly is an absolute demonstration that he did not look, or if he did, that he was bent upon suicide.  The presumption indulged by the learned counsel in behalf of plaintiff, is, we think, in this case, negatived by all the evidence in the case.  On the other hand, it is proper to consider the duty of the engineer

in charge of the defendant's train. It is undeniable that when he was yet 175 or 180 feet distant from the crossing on which plaintiff's husband was killed, he saw the deceased fifteen or eighteen feet from the track, and it was then that he began to give the danger signals, because he saw that the deceased was walking toward the tracks. The engineer testified that he thought he would stop when he whistled at him, and he did not change his opinion until he was nearly on him when he discovered that he was about to attempt to pass in front of him. In Guyer v. Railroad, 174 Mo. l. c. 350, it was said by this court: "Suppose the engineer saw him; what did he have a right to presume? It was daylight, the engine coming was in as plain view to the man on the roller as he was to the engineer. There was nothing to suggest to the engineer that the other was oblivious to the situation, or that he had failed to use his eyes and see what every one else there saw. Any reasonable man in the engineer's position would presume that the man on the roller would stop before crossing and let the engine pass. . . . Even though he saw the driver of the team approaching dangerously near the crossing, yet he had a right to presume that the driver had used his eyes and would act as a reasonable man under the circumstances would for his own preservation. If the team had been approaching rapidly, there might have been in that fact some suggestion that the driver intended to try to cross in front of the engine. But approaching, as he was, at a very slow pace, there was nothing to indicate that he would not or that he could not stop before going on the main track." And it was ruled in that case that the demurrer should have been sustained. So in this case, the engineer saw a man of mature years, walking slowly towards the crossing over which his engine must pass. It was broad daylight, nothing to obstruct the view of the traveler, the engineer, as in duty bound, gave the danger signals to warn him of the approaching train. What was there in the

circumstances that would cause the engineer to think for an instant that this matured person, in broad daylight, would be so reckless and negligent of his own safety as not to glance up and down the railroad track before attempting to go upon it, and if he looked, was bound to see and know that the train was bearing down upon the crossing, and although he had noticed that he was walking toward the track, could he not reasonably have presumed that the old gentleman had no intention of attempting to cross in front of a rapidly moving engine, but would stop before he came within the danger line? There is nothing in the evidence tending to show that the engineer had any reason to suspect or anticipate that the plaintiff's husband, an adult, in broad daylight, and with a full knowledge of the tracks, had any intention of leaving a place of safety and going upon the track in front of the train until the engine was so close to him that he could not then with safety to his train have averted the injury. That this is a reasonable presumption in circumstances like the one at bar, has been ruled by this court in a number of cases. [Carrier v. Railroad, 175 Mo. 482; Sharp v. Railroad, 161 Mo. 235; Tanner v. Railroad, 161 Mo. 497; Hayden v. Railroad, 124 Mo. 573.] This court in Kelsay v. Railroad, 129 Mo. l. c. 375, quoted and adopted the language of the Supreme Court of Michigan in Gardner v. Railroad, 56 N. W. 603, as follows: "It was broad daylight, and when within five feet of the north rail of the track it is undisputed that the plaintiff could see two hundred and fifty feet east along the main track. No one disputes that if he had but looked he certainly would have seen the train. It is evident, therefore, that he did not look; or, if he did, he saw the train, and carelessly attempted to cross in front of it, and in either case he was guilty of such negligence as to preclude a recovery. . . . One look eastward, and one less step taken, he would not have been upon the track. Upon any theory of the case, it was the duty of the court to

have directed the verdict in favor of the defendant.''
The facts of that case are on all-fours with those in
this and it must be ruled that the concurring and con-
tributory negligence of Mr. Schmidt in stepping in front
of this rapidly moving train, in broad daylight, and
without looking for this approaching train, is a complete
defense to defendant's action, and the circuit court
should have sustained a demurrer to the evidence.

II. Notwithstanding the conclusion we have reach-
ed, it is proper to note the contention of counsel for the
plaintiff that the facts of this case bring it within the
principle of Harlan v. Railroad, 65 Mo. 22, in which it
was said: ''When it is said, in cases where plaintiff
has been guilty of contributory negligence, that the com-
pany is liable, if by the exercise of ordinary care it
could have prevented the accident, it is to be understood
that it will be so liable, if by the exercise of reasonable
care, after a discovery by defendant of the danger in
which the injured party stood, the accident could have
been prevented, or if the *company failed to discover the
danger through the recklessness or carelessness of its
employees,* when the exercise of ordinary care would
have discovered the danger and averted the calamity.''

In our opinion the foregoing excerpt is inapplicable
to the facts of this case. The engineer did not fail to
discover the deceased near to and approaching the
track, nor did he fail to discover the danger to the de-
ceased by reason of any recklessness or carelessness on
his part, but the testimony shows that he was keenly alive
to the situation and immediately upon coming in sight of
the deceased, sounded the alarm whistle and caused the
bell to ring continually until he was struck. He had a
right to presume that a mature person in broad day-
light would not recklessly walk on a railroad track im-
mediately in front of a rapidly moving train, and there-
fore, he only considered deceased was in peril when he
discovered that in spite of the danger whistles and the
ringing bell, the deceased indicated he was about to step

on the track, but there is no foundation for saying that the engineer failed to discover this condition by reason of his reckless running. While the speed of his engine was in excess of that prescribed by the ordinance, it was in no sense reckless. It was the usual rate maintained at this point and the brake was set and the speed was being lowered to stop at the station. The engineer and fireman were both at their post observing the track. The statement quoted from Harlan v. Railroad, 65 Mo. 22, has no reference to such a state of facts as was developed in this case. Nor is this a case where a traveler has relied upon the presumption that the employees were obeying the law or ordinance and not running in excess of the speed prescribed and has on that account been caught on the track. This, as already said, is a case where a pedestrian has walked upon a railroad track in broad daylight without even looking to see if a train was approaching, and when, if he had looked, it would have been a physical impossibility for him to have failed to see the train. There can be no presumption in the teeth of the facts developed in this case that the deceased looked for a train. If he looked he saw the train, and if he saw it, he recklessly and negligently put himself in front of it and was killed, when one step backward or the refraining from taking one step would have wholly averted his injury and death. The negligence of the deceased was concurrent in point of time with the negligent running of the train and was the direct proximate cause of his death.

We can only account for the conduct of the old gentleman on the ground that he had become oblivious to his surroundings and was wholly unconscious of his situation.

From whatever point of view we look at this record we can but say that the deceased was negligent and that his negligence contributed to his death.

It results that the circuit court erred in not sustaining the demurrer to the evidence and directing a judg-

ment for the defendant, and its judgment is accordingly reversed.

All concur.