FRANK MITCHELL, Respondent, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, Oct. 1, and Dec. 3, 1906.

1. RAILROADS: Signals: Street Crossings. The alternative of ringing the bell or sounding the whistle under the statute applies to crossings in the country but not to crossings of public streets in cities where the bell must be rung continuously for eighty rods before reaching the crossing.

2. ———: Streets: Evidence. The evidence relating to the question whether a certain street crossing was in the confines of the city of Joplin is considered and held sufficient to establish the fact.

3. ———: Speed: Ordinance: Negligence. Running a train in the city limits at a greater speed than that prescribed by the ordinance is negligence.

4. ———: Traveler: Crossing: Look or Listen. A traveler in approaching a crossing must use his sense of sight or hearing to ascertain if there is any danger. The circumstances may not require that he both look and listen but common prudence requires the one or the other.

Mitchell v. Railroad.

5. ———: ———: ———: ———: Evidence: Frightened Horse. The above rules are applied to the evidence in this case and a traveler injured on a crossing is held not to have been guilty of contributory negligence as a matter of law; and it is a question for the jury as to whether the horse was frightened by coming suddenly in sight of the moving train and if so frightened, it was immaterial what direction he took in his fright since the defendant's liability attached when its negligence called into action the uncontrolled power of the horse.

Appeal from Jasper Circuit Court.—*Hon. Hugh Dabbs.* Judge.

AFFIRMED.

*L. F. Parker* and *Woodruff & Mann* for appellant.

(1) Defendant's demurrer to the evidence should have been sustained. The undisputed evidence of all the witnesses who testified on the question, as well as the unqualified admissions of the plaintiff himself on the stand, shows that after passing the last obstruction, to-wit, the cars standing on the east side track or switch, plaintiff had a clear space of from forty to fifty-five feet to cross before going on the main track, where he was struck, down which space, had he looked, he could have seen the approaching train for a distance of from six hundred to nine hundred feet; this view was entirely unobstructed; yet he drove across this space and upon the track immediately in front of the approaching train, and did not see it until he was within fifty feet of it, and was struck by it and injured. Under this statement of the evidence, even if it be conceded that defendant's train was negligently operated, plaintiff cannot recover. Huggart v. Railroad, 134 Mo. 673; Jones v. Barnard, 63 Mo. App. 501; Lien v. Railroad, 79 Mo. App. 475; Hayden v. Railroad, 124 Mo. 567; Kelsay v. Railroad, 129 Mo. 362; Fanning v. Transit Co., 103 Mo. App. 151; Grocer v. Railroad, 89 Mo. App. 534; Holwerson v. Railroad, 157 Mo. 216; Hook v. Railroad, 162 Mo. 581;

Payne v. Railroad, 136 Mo. 562; Lenix v. Railroad, 76 Mo. 91; Drake v. Railroad, 51 Mo. App. 562; Steppe v. Railroad, 85 Mo. 229. (2) Although the rule of law is that the negligence of Hotchkiss, the owner of the horse and buggy and the driver thereof, cannot be imputed to plaintiff, yet plaintiff cannot rightfully omit to use care in blind dependence upon the driver. 3 Elliott on Railroads, sec. 1174; Holden v. Railroad, 177 Mo. 465; Marsh v. Railroad, 104 Mo. App. 587; Howe v. Railroad, 64 N. W. Rep. 102. (3) Defendant's demurrer to the evidence should have been sustained for the further reason that if it be conceded, for the sake of argument, that defendant's train was negligently operated, yet it still devolved upon plaintiff to prove that such negligence was the approximate cause of the collision which resulted in his injury. This he did not do. There is absolutely no evidence tending to show that the collision and injury were caused by any such negligent acts of the defendant complained of in the petition, or that after the perilous position of plaintiff was discovered, the injury could have been averted had the train been running within the alleged ordinance limit, or had obeyed the statute by blowing the whistle or ringing the bell. Jackson v. Railroad, 157 Mo. 645; Kelly v. Railroad, 75 Mo. 142; Bluedorn v. Railroad, 121 Mo. 269; Killian v. Railroad, 86 Mo. App. 476; Barkley v. Railroad, 96 Mo. 367; Steppe v. Railroad, 85 Mo. 229; Molyneaux v. Railroad, 81 Mo. App. 25; Helm v. Railroad, 185 Mo. 212; Fore v. Railroad, 89 S. W. 1034.

*D. Decker, Gardner & Cameron* and *A. E. Spencer* for respondent.

(1) The cases cited by appellant under point 1, of its brief are not in point. Under such circumstances neither the deceased nor the plaintiff Mitchell were guilty of contributory negligence, and the case was properly submitted to the jury. Kenney v. Railroad, 105 Mo.

270; Johnson v. Railroad, 77 Mo. 546; Donehue v. Railroad, 91 Mo. 357; Neier, etc., v. Railroad, 6 S. W. 695. (2) The negligence, if any, of the driver, he not being in the employ or under the control of plaintiff, cannot be imputed to plaintiff. Plaintiff himself was not negligent, since as he testifies, he looked and listened. As soon as he saw the train he warned his companion, say, "Look out, Booth, there is the train" and that "he didn't have time to get out of the buggy." Dickson v. Railroad, 104 Mo. 504; Hunt v. Railroad, 14 Mo. App. 160; Keitel v. Railroad, 28 Mo. App. 663; Becke v. Railroad, 102 Mo. 547. (3) It is admitted that deceased could not see the approaching train till after passing the east switch, when his horse becoming frightened, he was in a position of peril. He had the right to presume that defendant would obey the law and observe the precautions provided for his safety—by keeping the bell ringing and running its train not more than twelve miles per hour. The bell was not ringing—the train was running twenty-five miles per hour. Therefore the failure of the defendant to ring the bell and the running of its train faster than twelve miles per hour was the proximate cause of the injury. Jennings v. Railroad, 112 Mo. 268; Eswin v. Railroad, 96 Mo. 295; Keim v. Railroad, 90 Mo. 322; Kenney v. Railroad, 105 Mo. 285; Esler v. Railroad, 109 Mo. App. 584; Baker v. Railroad, 147 Mo. 140; Kelley v. Railroad, 88 Mo. 534; Stepp v. Railroad, 85 Mo. 235; Johnson v. Railroad, 77 Mo. 546; Donehue v. Railroad, 91 Mo. 357.

JOHNSON, J.—Action to recover damages for personal injuries received by plaintiff at the crossing of a public street and defendant's railroad tracks in the city of Joplin. The judgment was for plaintiff in the sum of $3,000 and plaintiff appealed.

Plaintiff lived in Chitwood a few miles distant from Joplin. On January 9, 1905, he accompanied a Mr.

Hotchkiss—an acquaintance—on a trip to the latter city where he had some business to transact. They rode in a buggy drawn by one horse both owned by Hotchkiss who acted as driver. In returning home they travelled westward along a public thoroughfare called Main street, in Smelter Hill. This street is sixty feet wide and at a place in the west side of Joplin crosses defendant's railroad at a right angle. Defendant maintains three tracks at this place. Those on the east and west sides are sidetracks and that in the middle the main line. Witnesses gave the distance between the east track and main line at from forty to fifty-five feet and the distance from the east track to the east line of the right of way, at thirty-five feet. An unbroken row of buildings extending for some distance east of the right of way along the south side of the street, prevented a view to a person advancing from the east of trains approaching from the south on defendant's tracks and a similar chain of buildings on the north side of the street shut off the view in that direction.

From the evidence of plaintiff it appears that Hotchkiss drove in a moderate trot until they reached a point about thirty feet from the east track when he reduced speed to a walk. There was some snow on the ground, the weather was moderately cold and a light wind was blowing from the northwest. The two men had their ears uncovered and were both looking and listening for the approach of trains. The buggy made no noise and had the engine, with which they afterwards collided, given any warning signals of its approach, both were in condition to hear such signals in time to have stopped the horse before reaching the east track. This track was filled with standing freight cars, with the exception of an opening about twenty-five feet wide left at the crossing for the passage of vehicles. These cars extended southward the whole length of the side-track, a distance of six hundred feet or more. The space between

this line of cars and the buildings on the south side of the street next to the right of way was occupied by a pile of telegraph poles sufficiently high to prevent a view to the occupants of the buggy of an approaching train from the south. Plaintiff claims that the buildings, pile of poles and freight cars formed a continuous and complete obstruction so that no view of a train coming from the south was afforded until they reached the opening between the cars at the crossing of the east track. When they were on the crossing plaintiff looked south. He could see down the main track forty or fifty yards and seeing no train then looked north. At that moment the horse jumped in fright and though Hotchkiss put forth every effort to restrain him, plunged forward across the space between the two tracks. As they neared the main line crossing plaintiff again looked south and saw a passenger train approaching rapidly, the engine of which was not more than fifty feet away. The next instant the collision occurred. Hotchkiss was killed and plaintiff, badly injured, was carried on the pilot of the engine until it stopped.

The evidence of plaintiff is to the effect that the train in approaching the crossing was running at a speed of twenty or twenty-five miles per hour. The bell was not rung at any time nor was the whistle sounded until the moment of the collision. Plaintiff pleaded and introduced in evidence an ordinance of the city of Joplin forbidding the running of railroad trains, within the corporate limits of the city, at a greater speed than twelve miles per hour. The negligence alleged in the petition includes the acts of running at a higher rate of speed than that permitted by the ordinance and in failing to "ring the bell at a distance of eighty rods from said crossing and to sound said whistle at intervals until said locomotive had crossed said highway."

The answer contains a general denial and a plea of contributory negligence. Defendant's evidence tended

to show a state of facts that would absolve it from the imputation of the negligence charged and to sustain its contention that both occupants of the vehicle were guilty of contributory negligence, but as all issues of fact have been settled in plaintiff's favor by the verdict of the jury, we accept as proven the facts and inferences reasonably to be drawn therefrom that support his contention.

Our chief concern is with the questions arising under defendant's insistence that its instruction in the nature of a demurrer to the evidence should have been given. The acceptance of the facts adduced by plaintiff indisputably leads to the conclusion that defendant was negligent in the respects alleged in the operation of its train while approaching the crossing. Assuming that the crossing was within the corporate limits of Joplin, the provisions of section 1102, Revised Statutes 1899, required defendant to begin ringing the bell eighty rods therefrom and to continue ringing until the crossing had been passed. The alternative of ringing the bell or sounding the whistle applies to crossings in the country. [Van Note v. Railroad, 70 Mo. 641; Turner v. Railroad, 78 Mo. 578; Terry v. Railroad, 89 Mo. 586.] But not to crossings of public streets in cities. [Kennayde v. Railroad, 45 Mo. 255; Weller v. Railroad, 164 Mo. 180.] Defendant neither sounded the whistle nor rang the bell and therefore was negligent whether the crossing was situated within the corporate limits of the city or was in the country.

In this connection we will notice the point, made by defendant, that the evidence fails to show the crossing was in the city. The proof of this fact is somewhat meager doubtless for the reason that throughout the trial its existence was not disputed and from the questions propounded to witnesses by counsel on both sides appears to have been assumed. One witness was asked the direct question. "Where is this crossing with reference to the

city limits?" And answered. "It is east of the city limits." Q. "Inside the city limits?" A. "Yes, sir." Although the name of the city was not stated it is obvious that counsel and witness both referred to Joplin. The engineer of the engine that collided with the vehicle testified on behalf of defendant that the engine was equipped with an automatic bell ringer and that when the train entered the corporate limits of Joplin he set the appliance in operation and kept it going (except while stopping at stations) until the train had passed entirely through the city. He was asked if the bell was ringing at the time of the accident and answered, "Yes, I never shut it off at all." Q. "You never had stopped after leaving Sixth street?" A. "No, never had stopped it because we have to ring it all along." It is fairly inferable from this evidence that the railroad from Sixth street to the crossing was in Joplin. In the circumstances mentioned the proof was sufficient.

Defendant further was guilty of negligence in running its trains at a greater rate of speed than that prescribed by the ordinance. [Schmidt v. Railway Co., 191 Mo. 215, 90 S. W. 136.]

Under the hypothesis that defendant was negligent in these particulars, the questions of first importance suggested by the facts and circumstances disclosed, as well as by the argument of counsel, are these: Were the negligent acts of defendant or any of them the producing cause of the injury? And was plaintiff in law guilty of contributory negligence? Both plaintiff and Hotchkiss were required to exercise due care for their own safety which means that in approaching so dangerous a place as a railroad crossing, ordinary prudence made it their imperative duty to look and listen for an approaching train. But they had the right to assume that defendant would obey the law in the operation of its trains over the crossing and therefore would give the necessary signals and would not run a train at a greater

rate of speed than that fixed by the ordinance. Being in a position to hear warning signals and listening for them, they were not required by the fact that their vision was obstructed to stop the horse and go forward on foot to a place where an unobstructed view down the main track could be obtained. [Schmidt v. Railway, supra; Lang v. Railway, 115 Mo. App. 489.] In the Schmidt case the Supreme Court said: "The measure of precaution to be observed by the traveller depends often upon the circumstances and surroundings. The general rule is that in knowingly approaching the track of a railroad, he must use his senses of sight or hearing to ascertain if there be danger. If the view is so obstructed that he cannot see, he should carefully listen. The circumstances may not require that he both look and listen, but common prudence requires that he do either one or the other and a failure to do so renders his act negligence in law." And in the Lang case we held that, "Where obstructions exclude a view of the tracks, a person approaching the crossing is not necessarily compelled, in order to satisfy the requirements of reasonable care, to leave his vehicle and go forward to the track to convince himself by visual inspection that no danger is approaching. If he is in a position to hear the signals which he has the right to expect will be given and listening, hears none and advances slowly and attentively, for the court to hold him blameworthy for not going forward on foot and looking, would be imposing upon him the duty to observe extraordinary care, that is to take precautions not deemed necessary by ordinarily prudent persons." [Donohoe v. Railway, 91 Mo. 357; Baker v. Railroad, 122 Mo. 533.] The application of these principles to the facts before us makes the classification of the conduct of the occupants of the buggy in approaching the east side track a question of fact for the jury and not of law for the court. Had the signals been given they could and would have heard them and

doubtless would have stopped before entering the jaws of the trap — the narrow opening between the freight cars on the side track. As the buggy passed over the side track plaintiff and Hotchkiss both did what prudence required they should do. Each looked first in one direction and then in the other for approaching trains. Plaintiff first looked to the south but because he had not entirely emerged from behind the obstructing cars could not see down the main track beyond forty or fifty yards. Observing no danger he turned his eyes to the north and at that moment the horse became unmanageable.

Defendant argues that as the intervening space between the two tracks was fifty-five feet by actual measurement and immediately after crossing the side track the occupants of the buggy could see down the main track six hundred feet or more one of two conclusions is irresistible. If the driver did not lose control over the horse but attempted to "run the crossing" as some of defendant's witnesses say he did, plaintiff was negligent in law and on the other hand if the horse ran away it was the vice of the animal and not the negligent acts of defendant that furnished the proximate cause of the injury. In support of the last conclusion defendant endeavors to illustrate its argument with this example. Suppose the horse had become frightened several blocks away from the crossing and had bolted, could the fortuitous fact that he reached the crossing just in time to produce a collision between the engine and the buggy appear otherwise than as purely accidental and could the acts of defendant in running its train at an unlawful rate of speed or in failing to signal for the crossing by any logical reasoning be included in the line of direct causation? The supposed facts differ so widely in essential features from the real facts that they fail to illuminate any question of practical importance in the case. The horse was under complete control until

he crossed the side track. Defendant in failing to give warning of the approach of the train in effect told the occupants of the buggy that their way was clear and invited them to proceed over the crossing and thus they were lured into the sphere of danger by defendant's negligence. The jury had the right to draw the inference that it was the sight of the rapidly approaching train that frightened the horse and if this was the fact and further if it is true that the horse became unmanageable the scaring of the animal was the direct cause of the injury and that was proximately caused by the negligence of defendant in inviting plaintiff into danger and in providing that danger in the form of a swiftly advancing train. The course the horse might take in its wild efforts were merely incidental, whether it ran into a collision with the train or whirled and upset the vehicle or dashed to one side and ran into some obstruction were each a possible consequence of its fright. The liability of defendant for the damages inflicted attached when its negligence called into action the uncontrollable power of the animal and the subsequent happenings were purely consequential. Certainly from the moment the driver lost control over the horse the conduct of the unfortunate occupants of the buggy ceased to be a subject for classification under the rules of negligence. It would be a solecism to say that a person should exercise care when he has neither freedom of action nor opportunity to think as is the case when suddenly he finds himself in the grasp of overpowering forces that eminently threaten him with great bodily harm and compel him to act if at all on unthinking impulse. [Lang v. Railway, supra.]

In disposing of the demurrer to the evidence it is not necessary to consider the questions arising under the hypothesis that the driver with knowledge that the train was approaching deliberately attempted to cross the track ahead of it. That theory is rejected because it is

at variance with the proof adduced by plaintiff and for the present purpose we are assuming the state of facts most favorable to plaintiff. From that standpoint the views expressed necessitate the conclusion that both plaintiff and Hotchkiss were free from negligence in approaching the crossing and in what they did after the horse began to run away and that the proximate cause of plaintiff's injury was the negligent failure of defendant to give the statutory warnings and its violation of the city ordinance regulating the speed of trains. The learned trial judge committed no error in overruling the demurrer to the evidence.

What we have said answers most of the objections made to the rulings of the trial judge in the giving and refusing of instructions asked. The others have been considered and found to be without merit. No prejudicial error was committed in the trial of the case and the judgment is affirmed. *Broaddus, P. J.,* concurs; *Ellison, J.,* dissents.