CARL HYDER, by His Next Friend, PAUL HYDER, Respondent, v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, and FRED HOBBS, Appellant.*

Kansas City Court of Appeals. June 29, 1925.

1. **PLEADING: After Verdict, if Petition States Any Cause of Action, Though Defectively, It is Good.** Petition not attacked by demurrer, is to be liberally construed after verdict, and if it states any cause of action, even though defectively, it is good.

2. **NEGLIGENCE: Railroads: Statute Does Unqualifiedly Require Sounding of Whistle When Train is Approaching Crossing.** Section 9943, Revised Statutes 1919, does not unqualifiedly require the sounding of a whistle at any time when a train is approaching a crossing but gives as an alternative the continuous ringing of the bell for eighty rods therefrom.

3. ———: ———: **Statute Held Not to Require Giving of Stock Alarm Whistle.** Section 9943, Revised Statutes 1919, does not require train approaching crossing to sound stock alarm whistle, a whistle calculated to terrify animals.

219 Mo. App.—30.

4. ———: ———: Blowing Sharp Blasts of Stock Alarm Whistle Causing Horse to Bolt Across Track in Front of Engine Held Negligent. Where engineer gave three or four sharp blasts of stock alarm whistle eighty-four feet from crossing, causing horse attached to buggy to bolt across the track in front of engine, *held* negligence, as section 9943, Revised Statutes 1919, did not require engineer to give any other signal than bell which he was ringing continuously.

*Corpus Juris-Cyc. References; Pleading, 31 Cyc., p. 82, n. 12. Railroads, 33 Cyc., p. 940, n. 40, 42; p. 960, n. 53.

Appeal from the Circuit Court of Caldwell County.— *Hon. Arch B. Davis,* Judge.

AFFIRMED.

*Pross T. Cross* and *Davis & Ashby* for respondent.

*Fred S. Hudson* and *Morrison, Nugent, Wylder & Berger* for appellant.

BLAND, J.—This is a suit for damages for personal injuries. Plaintiff recovered a verdict and judgment in the sum of $5,000 and defendant railway company has appealed.

Plaintiff was injured while in a buggy which was struck by one of defendant railway company's trains on the 16th day of October, 1922, at a highway crossing of said company's tracks near Lawson, Missouri. The train was running at the rate of thirty miles per hour. Plaintiff, together with several other small boys, the oldest of whom was eleven years of age, was coming home from school. When they were nearing said defendant's tracks a train passed, and thinking that there would not be another train immediately following this one in the same direction, they approached to within about twelve feet of the track when for the first time they discovered the train, which struck the buggy, approaching around a curve from the south, about 700 feet distant. The buggy was being driven toward the west. At this time upon

seeing the train the driver, Alva Hyder, jumped from the buggy and went to the horse's head and took hold of the bit, holding it and talking to the horse, which, the evidence shows, was a gentle animal and was not frightened by trains passing in the usual manner. The engine continued to come forward, the engineer having his head out of the window on the right-hand side of the cab, the horse standing still. When the engine arrived at a point about eighty-four feet from the horse, the engineer gave three or four short sharp blasts of the whistle, known as the stock alarm, which caused the horse to bolt across the track. The engineer drew his head within the cab when he gave the alarm and the train continued to proceed forward, striking the buggy, which resulted in plaintiff's being severely injured.

The engineer testified that when he came around the curve he saw a person in the buggy and some one in front of it at the horse but did not know what the one in front was doing there, but that the horse was moving and he expected it to proceed across the track unless some alarm was given; that it was customary for him to give the stock alarm when any animal or person was close to the track. He admitted that the stock alarm was for the purpose of frightening animals away from the track. However, there was testimony by a witness who made an experimental test that while he was riding with his head out of the window of a passenger coach of one of said defendant's trains approaching the crossing in question from the south he distinctly saw one of the Hyder boys standing about ten or twelve or fifteen feet from the track when the witness was 480 feet from the crossing. The engineer testified that his bell was ringing all the time and had been since the train left Lawson, which was some miles south; that he sounded the crossing whistle eighty rods from the crossing and that he did not whistle again until he gave the alarm whistle we have mentioned; that he did not sound the whistle at intervals as he passed between the whistling post and the

crossing.  He further testified that if he had seen the horse standing with the boy holding its head, he would have had no occasion to give the stock alarm.

The petition in part is founded upon the negligence of the engineer in sounding the stock alarm under the circumstances.

It is first contended that the petition fails to state a cause of action.  This is based upon the contention that section 9943, Revised Statutes 1919, requires the sounding of a whistle eighty rods from the crossing and at intervals until the train shall have crossed the crossing and that the petition fails to state that the whistling was unusual and unnecessary in the operation of said defendant's train.  The petition was not attacked by demurrer and after verdict it is to be liberally construed and if it states any cause of action, even though defectively set forth, it is good.  [Becke v. Forsee, 199 S. W. 734; Armstrong v. Railroad, 195 Mo. App. 83.]

The petition pleads that after the driver of the horse discovered the approach of the train he stopped the horse and vehicle while the same were a safe distance from the track and out of danger of being struck by the train; that he was standing at the head of the horse holding the same by the bridle for safety and out of precaution; that while the horse and vehicle and the driver were in this position the engineer saw the horse and vehicle standing near the track and the horse being held by the driver thereof, or could have seen said things by the exercise of ordinary care; that when the engineer of the train was near the crossing he—

". . . negligently and carelessly gave and made on said locomotive a series of short, sharp, piercing, terror-striking blasts of the whistle, and gave and made what is commonly known as a 'stock whistle' and a 'stock alarm whistle' and 'alarm whistle,' each of said whistles being generally used and employed by engineers on said railroad for the purpose of frightening and terrorizing horses and other animals when same are on or near de-

fendant's track, and used for the purpose, and calculated to scare said animals and horses and cause it to run away and be terror stricken and panic stricken, and that thereby and by reason of the said negligent giving and making of said whistles and noises and signals, said horse was caused to become frightened and unmanageable.''

The statute does not unqualifiedly require the sounding of a whistle at any time when a train is approaching a crossing but gives as an alternative the continuous ringing of the bell for eighty rods therefrom. [Turner v. Railroad, 78 Mo. 578; Van Note v. Railroad, 70 Mo. 641; Kenney v. Railroad, 105 Mo. 270; Mitchell v. Railroad, 122 Mo. App. 50; Maginnis v. Railroad, 182 Mo. App. 694.] Even where a whistle is given to comply with the statute there is nothing in the statute requiring the giving of the stock alarm whistle, a whistle calculated to terrify animals, such as the petition alleged was given in this case. The clear inference from the allegations of the petition is that the giving of the whistle under the circumstances was unnecessary and uncalled for.

It is insisted that the court erred in refusing to give defendants' instruction in the nature of a demurrer to the evidence for the reason that there is no testimony tending to show that the whistle given by the engineer was unnecessary. But there is no merit in this contention. The inference to be drawn from the testimony of the engineer is that he sought to comply with the statute by the continuous ringing of the bell and not by the method of sounding the whistle; that he did give a whistle eighty rods from the crossing as complying with the statute in part, but he failed to comply with the other provisions of the statute concerning whistling and was not relying upon the sounding of the whistle, for the reason that the statute not only provides for its sounding at eighty rods from the crossing but it must be sounded at intervals until the crossing has been passed. The engineer was not sounding the whistle at intervals and the inference from his testimony is that he would not have

sounded it at a point eighty-four feet from the crossing had it not been for the presence of the horse and buggy, which he thought were about to cross the track. Of course, the jury were not required to believe his testimony that he thought they were about to cross the track as there was ample testimony that he could have seen the boy holding the horse and have realized the purpose of his doing so at the time the engineer sounded the whistle. At the rate of speed at which the train was moving, it reached the crossing in less than two seconds. The sounding of the alarm under the circumstances, from the standpoint of the engineer, could have no other effect than to cause the horse to bolt across the track in front of the engine or wheel about and in the doing of either the life and limb of the boy holding the horse's head would be endangered, to say nothing of that of the occupants of the buggy. The sounding of it under the circumstances was clearly negligent and uncalled for. It is difficult to imagine a clearer case of negligence. Even if the engineer had been complying with the statute in sounding the whistle at intervals, there was no occasion for him to give the *stock alarm* whistle. It has been held that even in giving the whistle required by law, the engineer should do it in a proper manner, having due regard to the situation. [Brown v. Railroad, 89 Mo. App. 192, 195.]

The case of Pontius v. Railway, 174 Mo. App. 576, and Turner v. Railway, 134 Mo. App. 397, are clearly not in point. In the former case the engineer did not know of, and had no reason to anticipate, the presence of the team. The latter case was based upon the failure to warn the driver by sounding the whistle so that the plaintiff, who with his horse was at a point distant, would have been warned and refrained from approaching near to the railroad track which, on account of the failure to sound the whistle, he did, resulting in the horse becoming frightened. As before stated, the engineer in the case at bar was not required to give any signal other than the bell.

It is insisted that the court erred in giving plaintiff's instruction No. 1 but the same argument is made in reference to this point as to the others.

The judgment is affirmed. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.