JOSEPH MATHER, Respondent, v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, May 27, 1912.

1. **NEGLIGENCE:** Street Railways: Collision with Vehicle: Humanitarian Rule. Plaintiff sued for damages for injuries received when the buggy in which he was riding was struck in the rear by an electric propelled street car. He was driving west and had just turned onto the street car track to go around

Mather v. Railroad.

a wagon ahead when someone warned him of the rapid approach of a west bound car. He then turned to get off the track when the car struck the rear axle of his buggy, and he was thrown out. No bell was sounded or attempt made to check the speed of the car before the collision. *Held,* that the conduct of the motorman as depicted in the evidence clearly was negligent under the humanitarian rule.

2. INSTRUCTIONS: Defining Negligence. The rule that the term negligence must be defined in instructions to the jury does not refer so much to a mere law dictionary definition as to a definition by the statement of facts or acts from which the inference of negligence would have to be implied.

Appeal from Jackson Circuit Court.—*Hon. Walter A. Powell,* Judge.

AFFIRMED.

*John H. Lucas* and *Hogsett & Boyle* for appellant.

*I. B. Kimbrell* and *W. B. Kelley* for respondent.

JOHNSON, J.—Plaintiff sued to recover damages for personal injuries received in a collision between a buggy in which he was riding and an electric street car operated by defendant. The petition alleges that the injury was caused by negligence in the operation of the car and includes negligence under the humanitarian rule as one of the causes. The answer is a general denial.

The cause is here on the appeal of defendant from a judgment of $2770 recovered by plaintiff in the circuit court. The injury occurred in the morning of February 15, 1910, on Electric street in Independence. The street runs west from the courthouse several blocks and then deflects to the southwest. Defendant operates a double track car line on this street and the injury was inflicted by a westbound car running on the north track.

Plaintiff, who is a physician living in Independence and familiar with the locality in question, was riding westward on Electric street in a single buggy. His driver was doing the driving and, according to the evidence of plaintiff, the buggy was driven over the north rail of the westbound track a distance of over four hundred feet. They overtook a light delivery wagon that was being driven on the north side of the street and had just started to turn a little to the left to pass the wagon when someone called to them that a car was coming from behind and the driver immediately turned the horse to the right behind the delivery wagon to allow the car to go by. The car which was running at a speed of over fifteen miles per hour overtook the buggy before it could be driven from the track and the right side of the front end of the car—not the fender—struck the rear axle of the buggy about midway between the wheels. The impact threw the buggy to the right of the track and threw plaintiff to the pavement inflicting the injuries for which he seeks to recover in this action.

The buggy had a top and neither plaintiff nor the driver looked back to see if a car was approaching and neither knew of the presence of the car until a bystander shouted a warning a moment before the collision. Witnesses introduced by plaintiff say that the bell was not sounded nor did the motorman attempt to reduce speed until after the collision. Defendant's witnesses give a different version of the injury. They say the bell was sounded as the car neared the buggy and that until an instant before the collision the buggy was being driven on the pavement to the right of the track; that suddenly the driver attempted to pass the wagon in front by turning to the left and on to the track right in front of the car and that the car struck the left side of the buggy and threw it off the track.

The court overruled the demurrer to the evidence offered by defendant and at the request of plaintiff

gave instructions which submitted no other issue of negligence than that pleaded as a breach of the humanitarian duty defendant owed plaintiff. The principal instruction was as follows: ''The court instructs the jury that if you believe from the evidence that the plaintiff, Joseph Mather, was, at the time and place in question, in a position of imminent peril of being struck by the car mentioned in evidence, by reason of the fact that the buggy in which he was seated was upon the track upon which said car was running, and that the motorman saw him in such position of danger, if any, or by the exercise of reasonable care would have so seen him in time to have slackened the speed of said car, or to have stopped the same, and avoided striking and injuring plaintiff, but negligently and carelessly failed to do so; and if you further believe and find from the evidence that by reason of the foregoing careless and negligent acts of said motorman, if you find them to have been careless and negligent, the buggy in which plaintiff was riding was struck and plaintiff was thrown out of the same and injured, then your verdict must be for the plaintiff, even though you believe and find from the evidence that plaintiff negligently placed himself in danger upon the street car track mentioned in the evidence.''

Among the instructions given at the request of defendant were the following: ''The court instructs the jury that if you find and believe from the evidence that the plaintiff either went upon the track or so close to the same, in front of the moving car when the car was so close to him that it could not be stopped by the exercise of ordinary care before it struck the buggy in which he was riding, your verdict must be for the defendant.''

''If the physical facts, as shown by the evidence in this case, and common observation and experience are in conflict with and contrary to the testimony of any witness in this case, then it is your duty to take

into consideration such physical facts and common observation and experience, and to disregard the testimony of any such witness in conflict therewith, and contrary thereto, insofar as they so conflict.

"If you believe and find from the evidence that at the time and place in controversy plaintiff could, by the exercise of reasonable and ordinary care, have avoided injury from the car in question, and that he failed to do so, and by reason thereof, he was injured, then your verdict must be for the defendant."

It is argued by counsel for defendant that the court erred in overruling the demurrer to the evidence. Much stress is laid on the theory of the physical impossibility of the account of the injury given in the evidence of plaintiff. It is the idea of counsel that if this heavy, double-trucked street car, running from fifteen to twenty miles per hour had struck the rear end of the buggy, it would have demolished both of the hind wheels, and that since no such result followed the collision, we must dismiss plaintiff's version of the injury as a story too incredible to be believed. There is evidence that the left hind wheel was mashed down and that the rear axle was badly sprung. The position of the buggy as described by the evidence of plaintiff left only its rear end in the path of the car. The right wheel was in the clear, the left just over the north rail. The rear axle was in a highly obtuse angle with the rail and it is not difficult to believe that the corner of the car passed between the wheels and struck the axle a glancing blow, the result of which was the hurling of the buggy to the right. The reasoning of counsel for defendant applies with stronger and more persuasive force to the description of the injury in defendant's own evidence. If, as defendant's witnesses aver, the driver had turned the horse to the left and had driven on the track in front of the car, then not only the broadside of the vehicle but the horse as well was in the

path of the car and it is hard to understand how the buggy escaped demolition and the horse serious injury. We shall not hold that the evidence of plaintiff indisputably is contradicted by the conceded physical facts. The jury were entitled to draw the conclusion that the buggy was being driven along and astride the north rail of the track for a distance of over four hundred feet and that without giving any warning and without checking speed the motorman ran his car at high speed into a collision with a buggy in plain view on the track and that until too late for a collision to be averted, the driver of the buggy gave no sign of turning out to give the car a clear track.

It has been said by the courts of this state over and over again that the public streets of a city are for the general use of the public and that no class of vehicles is allowed a paramount right to any part of the street. The driver of a horse-drawn vehicle has a right to drive in that part of the street occupied by street railway tracks and cannot be convicted of negligence in so doing as long as he exercises his right reasonably and with due regard for the rights of others who are lawfully using the street. Inasmuch as street cars are run on fixed tracks at higher speed than that of horse vehicles the driver of a horse who has the whole roadway for his use has no right to appropriate a street car track to his own use and by obstinately remaining on the track unnecessarily obstruct or hinder the passage of street cars. To allow him such privilege would be to bestow on him a superior right to the use of the track. It is his duty when he is driving on a track in the same direction cars are operated thereon to give reasonable attention to the way behind him to discover the approach of a car and to make a reasonable effort to give way to the car in order that its progress may not be unnecessarily retarded. [Hicks v. Railway, 124 Mo. l. c. 123; Rapp v. Transit Co., 190 Mo. 144.]

Since the judgment before us is founded solely upon a breach of the last chance rule the issue of whether or not the peril of plaintiff was caused in whole or in part by his own negligence is unimportant and we pass from the duty of a traveler, such as he, to that of the operator of the street car. The car was being run at high speed and the motorman could see the buggy when it was a long distance ahead. He could see the driver was making no effort to turn out. He would have been justified in assuming that the occupants of the buggy would not be remiss in the observance of their duty but the law did not give him the right to rely implicitly on such presumption. It imposed on him the active duty of giving close attention to the vehicle as long as it remained in the pathway of the car and of keeping the car under such control that he could avert a collision by stopping should it turn out that the occupants of the vehicle were negligent and would not turn out in time.

The function of the humanitarian principle and its effluent rules is to deal with just such cases as this and to say that the motorman had a right to run his car at high speed to a collision with a buggy on the excuse that he assumed the buggy would leave the track at the last moment would amount to a repudiation of the principle and to a declaration that the driver of a horse vehicle could travel along a street railroad only at his own risk of injury. The conduct of the motorman as depicted in the evidence of plaintiff clearly was negligent under the humanitarian rule. The demurrer to the evidence was properly overruled.

Counsel for defendant object to the principal instruction given at the request of plaintiff on the ground, first, that it employs different forms of the words *careless* and *negligent* without defining the words. Instructions for the plaintiff which without defining the word negligence or stating any hypothe-

sis of facts merely directs a verdict on the finding that the injury was negligently inflicted are erroneous. As is said in Hinzeman v. Railroad, 182 Mo. l. c. 624:

"It is the duty of the court by instructions to submit to the jury questions of fact and enlighten them as to the legal effect to be given to the facts when found. When a man has committed certain acts we say he has been guilty of negligence, but when we submit the case to a jury we do not say if you find that the defendant has been guilty of negligence you should find for the plaintiff, but we define negligence in the instructions, and to say to the jury, if you find that the defendant has done certain acts in the manner covered by that definition, then he has been guilty of negligence and you should find accordingly."

But where, as here, the terms are employed merely to characterize the acts stated in a given hypothesis a failure to define the words careless and négligent is not reversible error. The case of Sweeney v. Railway, 150 Mo. 385, is in point: "This (negligence) is a word the meaning of which is well understood and no definition of it was necessary. As used in the instruction it could not have been misunderstood by the jury, or in any way have misled them." [See, also, Rattan v. Railway, 120 Mo. App. l. c. 279.]

The rule that the term *negligence* must be defined does not refer so much to a mere law dictionary definition as to a definition by the statement of facts or acts from which the inference of negligence would have to be implied. Or to state it differently the rule is merely corollary to the fundamental rule that the instructions of the plaintiff in negligence cases which relate to the issue of negligence must restrict the recovery to the precise acts of negligence pleaded in the petition. This point must be ruled against the contention of defendant.

Nor do we agree with defendant that the instruction failed to require the jury to find that plaintiff was oblivious to his peril and that both the peril and his oblivion were known or should have been known to the motorman. The facts of the hypothesis submitted in the instruction sufficiently embody those elements of a last chance cause though they were not stated in specific terms. Certainly the jury following the instructions were compelled in order to find for plaintiff to believe that his oblivion to his peril was real and obvious to the motorman had he been in the exercise of reasonable care. We find no prejudicial error in the instruction.

Objections to the rulings of the court on evidence are argued but all clearly are without merit and need not be discussed. Point also is made that the verdict is excessive but we think the assessment of damages was well within evidentiary bounds. The cause was fairly tried and the judgment is affirmed. All concur.