NAPOLEON B. DUNN, Respondent, v. THE MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, December 6, 1915.

1. **DAMAGES: Railroads: Approaching Track: Contributory Negligence.** Plaintiff was working near a switch track leading from defendant's depot yards to its roundhouse. Needing a bar of iron he saw a piece of gas pipe lying west of him and about two and one-half feet from the rail. Without looking to the east to see if a train was coming behind him from the east he started west to the gas pipe keeping close to a path four feet from the track. He stooped and picked up the gas pipe and as he arose and turned to face east was struck by the end of the pilot beam of defendant's engine. He did not look behind him after he started. *Held*, that since he admits he approached dangerously near to a railroad track without looking for a train, he must be held guilty of contributory negligence as matter of law. And for this reason plaintiff cannot recover upon the ground that the defendant exceeded the speed limit established by city ordinance at that place.

2. ———: ———: ———: ———. The fact that the track was a switch track makes no difference. It was a track in use and was in itself a signal of danger. There was, therefore, as much necessity for looking when approaching this track as any other.

Dunn v. Missouri Pacific Ry. Co.

3. ———: ———: ———: ———: **Cause of Injury: Jury Question.** Possibly plaintiff could not be held to be guilty of contributory negligence, as a matter of law, if, at the time he started west, the train was so far away that it could not have been seen, or was so far distant that any reasonably prudent man would know he had plenty of time to get the pipe before the train could arrive, traveling at a lawful rate of speed. If the train was that far away but was going at such excessive and unlawful speed as to enable it to travel that great distance and strike plaintiff in such an unreasonably and unexpectedly short time, then perhaps it would be solely the speed that caused the injury and not plaintiff's failure to look. In that case, the question whether his failure to look contributed to his injury would be for the jury to determine. But in this case the speed of the train was not so great as to give rise to an inference that the engine was so far away as that, or that the engine could not have been seen by plaintiff had he looked.

4. ———: ———: ———: ———: **Humanitarian Rule.** But plaintiff's contributory negligence will not defeat his recovery if, after he is seen to be in danger, the persons in charge of the train had time, either to warn him so that he could have escaped, or to prevent the collision themselves by slowing, up or stopping the engine, and failed to do so. In such case there would be a violation of the humanitarian rule against which plaintiff's contributory negligence constitutes no defense.

5. ———: **Seeing One in Danger When to Look Is to See.** A man was on the pilot of the engine whose duty it was to look for danger. He swore he was looking west (in plaintiff's direction). The ground was level, the view unobstructed for over one hundred yards before plaintiff was reached. Under these conditions to look was to see, and, therefore, the jury were entitled to disregard his statement that he did not see plaintiff in time to warn him.

6. ———: ———: **Place of Safety.** Plaintiff, in walking west alongside the track was within a few inches of the line of danger. He gave no intimation that he knew the engine was coming. A slight step, a swaying of the body, or a swaying of the engine would bring him within striking distance of the pilot beam. In such circumstances plaintiff cannot be said to be in a place of safety so as to clearly and conclusively excuse the man on the pilot from warning him. If a reasonably prudent man, exercising ordinary care, would have warned him and could have done so in time, then the man on the pilot was negligent in failing to do so, and defendant would be liable under the humanitarian rule.

7. ———: ———: ———: **Duty to Warn.** The duty to warn did not lie dormant until the man on the pilot actually knew plaintiff was within reach of the pilot beam. That duty arose as soon as he had sufficient notice to put a reasonably prudent man on the alert. He must then take such precautions as such a man would take under similar circumstances.

8. ———: **Instructions.** Where there are two grounds of negligence alleged in the petition, upon one of which plaintiff is not, entitled to recover, it is error to submit the case upon instructions which authorize the jury to find for plaintiff upon either ground where there is a general verdict returned.

Appeal from Cole Circuit Court.—*Hon. J. G. Slate,* Judge.

REVERSED AND REMANDED.

*C. D. Corum* for appellant.

*James E. Hazell* for respondent.

TRIMBLE, J.—A suit to recover damages for personal injuries. Plaintiff, while working near the south side of defendant's south switch track in the railroad yards at Jefferson City, was struck on the head by the end of the pilot beam of an engine being taken to the roundhouse by the engine-hostler and his helper. Judgment went for plaintiff, and defendant has appealed.

Plaintiff was fifty-six years old and had been employed by two other railroads as a bridge and building carpenter. On the morning of his injury he entered the employ of defendant and was directed by defendant's foreman to go to work riveting stove pipe at a place some eight or ten feet south of defendant's south switch track and within a few feet of where two other employees were at work. Plaintiff was told he would have to fix a place to work. Thereupon he prepared a frame to use in the work and punched holes in several joints of stove pipe. He then found he needed an iron upon

which to clinch or fasten the rivets, and, after looking around, he saw a piece of gas pipe lying about thirty feet west of where he was working and about two and one-half feet south of the south rail of the switch track. Said piece of gas pipe was lying between said south rail and a pile of ties and rubbish about four feet from the track. There was a beaten path alongside of, and some four feet south from the track, and plaintiff, keeping on this path walked to the gas pipe, stooped and picked it up, and, just as he turned around to face the east, he was struck on the left side of the head and seriously injured by an engine going west on the switch track to the roundhouse. He was not aware of the presence of the engine until the moment it struck him.

The question on this appeal is whether plaintiff is entitled to recover. Defendant says he is not; that its demurrer should have been sustained; and we are asked to reverse the case outright on that account. Of course, before this can be done, it must clearly appear that there is no substantial evidence to support plaintiff's case; that, after giving to plaintiff the benefit of every reasonable inference the evidence will bear and accepting as true all evidence in his favor, it is still seen that plaintiff, as a matter of law, is not entitled to recover. If, however, under any reasonable view of the evidence there is any theory upon which plaintiff is entitled to prevail, then the verdict reached by the jury cannot be set aside.

The petition charged that the defendant's servants operating the engine negligently ran it in excess of eight miles per hour in violation of a city ordinance, and that said servants in charge of said engine negligently ran it against plaintiff without warning of any kind; that plaintiff was in plain view, and, by the exercise of ordinary care, said servants knew or could have known of the dangerous situation of plaintiff in ample time to have prevented the collision.

The answer pleaded contributory negligence.

An ordinance of the city limited the speed to eight miles per hour. The evidence amply showed that the engine exceeded this speed. The hostler running it said he was going eight or ten miles per hour; his helper placed the speed at ten miles; while another witness said it was going from twelve to fifteen miles per hour. However, the speed of the engine is not referred to here as an independent ground of negligence upon which plaintiff can recover. Because plaintiff admits that when he started west along the path to get the gas pipe he did not look east to see whether an engine was coming, and he also admits that he did not look east at any time after he started. One who approaches dangerously near to a railroad track without looking to see whether a train is coming, must be held to be guilty of contributory negligence as matter of law. In conceding that plaintiff was thus guilty of contributory negligence, we are not unmindful of the fact that this was a switch track and that plaintiff testified he looked east past the "crossover," (the entrance to the switch track in question and which was about one hundred yards away), and saw no engine coming but did see one which he supposed was at work down in the yards farther east. But while the track was a switch track yet it was one that led to the roundhouse, and, necessarily, engines would pass to and fro over it, and the evidence shows they did so pass. The track was a track *in use* and was in itself a signal of danger. There was, therefore, as much necessity for looking when plaintiff approached this track as any other. And although plaintiff says he looked east and saw no engine on the switch track, yet his evidence shows that this was *before* he saw the gas pipe down the track and started for it. He does not state how long it was before he started to walk west that he looked east nor how near that was to the time he started. He does say that he looked east as he came around the tool house looking for something to rivet the stove pipe on; but it was after this that he noticed the gas pipe

west of the tool house and west of his place of work. And elsewhere in his testimony he says he did not look east at the time he started west for the gas pipe and that he did not look at any time thereafter. Possibly plaintiff could not be held to be guilty of contributory negligence as a matter of law if, at the time plaintiff started west, the train was so far away that it could not have been seen, or was so far distant that any reasonably prudent man would know he had plenty of time to get the pipe before the train could arrive traveling at a lawful rate of speed. If the train was that far away but was going at such an excessive and unlawful speed as to enable it to travel that great distance and strike plaintiff in such an unreasonably and unexpectedly short time, then perhaps it would be *solely* the speed that caused the injury and not plaintiff's failure to look. In that case, the question whether his failure to look contributed to his injury would be for the jury to determine. But the speed of the train, while shown to be in excess of that prescribed by ordinance was not so great as to give rise to an inference that the engine was so far away as that, or that it could not have been seen by plaintiff at the time he started west, had he looked. So that it cannot be claimed that plaintiff, even if he had looked, would not have seen the train or would have reasonably supposed, as an ordinarily prudent man, that he had time to get the pipe. The train even if going as high as fifteen miles per hour could not have been an exceedingly great distance away when plaintiff started because plaintiff says he walked to the gas pipe, picked it up and was struck just as he arose and was turning around to the east. Plaintiff therefore could have seen the train when he started west, and if he then and thereafter failed to look, he was negligent and his negligence must be deemed to have contributed to his injury as matter of law. [Stotler v. Chicago and Alton Railroad, 204 Mo. 619; Schmidt v. Missouri Pacific Railway Co., 191 Mo. 215.] Hence, we say plain-

tiff cannot recover upon the ground of negligent speed in the operation of the engine.

But plaintiff's contributory negligence will not defeat his recovery if, *after* he is seen to be in danger, the persons in charge of the train had time, either *to warn him* so that he could have escaped, or to prevent the collision themselves by slowing up or stopping the engine, and failed to do so. In such case defendant's servants would be guilty of a violation of the humanitarian doctrine against which plaintiff's contributory negligence constitutes no defense.

On this feature of the case we must bear in mind the allegations of the petition. It says the plaintiff was *in plain view* of the persons on the engine; that they knew, or by ordinary care could have known, that he was in danger in time to have avoided the injury, but that they negligently ran against him without *warning of any kind*.

The evidence undoubtedly justified the jury in finding that plaintiff was *in plain view* of at least one of the men on the engine. From the "crossover," where the engine entered upon the switch track, down to where plaintiff was struck, was over one hundred yards. This ground was level and the view unobstructed. It is conceded that the hostler helper was *in front of the engine standing on the footstep of the pilot beam*. He swore that he took this position at the "crossover" and there rode up to the point where plaintiff was struck; *that he was facing west* (which was directly toward plaintiff); that one of his duties in standing on the pilot was *to watch for danger*. If the ground was level and the view unobstructed, what was there to prevent him from seeing plaintiff as the engine came up behind the latter? The man on the pilot was looking in plaintiff's direction; it was one of his duties to watch for danger; and how could he help but see him? Under these conceded facts surrounding the hostler-helper as he rode on the pilot toward plaintiff, the jury are entitled to disregard

his statement that he did not see plaintiff walking near the track with his back to the engine, and did not see him stoop and pick up the gas pipe which lay in the zone of danger. The jury could well say that, under the conceded circumstances, he did see him. It has been held that the testimony of a plaintiff, who is concededly in a position where to look is to see, will not be accepted but will be *disregarded* when he says he looked and did not see. [Weigman v. St. Louis, etc., R. Co., 223 Mo. 699, l. c. 712; Hook v. Missouri, etc., R. Co., 162 Mo. 560, l. c. 561.] That which is sauce for the goose must be sauce for the gander. Hence the jury are fully justified in not believing the statement of the hostler-helper that he did not see plaintiff in a place of danger in time to warn him. Indeed, he admits he saw plaintiff when the engine was thirty feet from him, but says plaintiff at that time was five or six feet out from the track, *coming east,* and in no danger. But the jury are not compelled to believe this last part which excuses him from blame. They have the right to accept plaintiff's statement that he was struck just as he arose from his stooping posture and was turning around. If plaintiff walked west to the gas pipe and stooped and picked it up and was struck just as he turned around, then, when the helper saw him thirty feet away, plaintiff must have been dangerously near the track and was either going west with his back to the engine or was in the act of picking up the gas pipe. In either situation he was in danger and, if the hostler-helper had called to him, can anyone say he would have had no time to get out of the way? Unless we can say that this was *conclusively* too late, it would be for the jury to say whether the hostler-helper had time, *even in thirty feet,* to warn him. There was no bell ringing on the engine, no whistle blown, and no warning given plaintiff of any kind.

The evidence is such, however, as to justify the jury in believing that the hostler-helper saw plaintiff *before* he got in thirty feet of him, and must have seen

him as he walked west toward the gas pipe with his back to the engine and giving no sign that he was aware of its presence. The engine was giving no warning of its approach. What was there then to lead the man on the pilot to believe plaintiff knew of the engine and would get out, or keep out, of its way? This being so, can anyone say it was not the duty of the man on the pilot, as a reasonably careful and prudent man, to at least call to him in warning?

But it is said that plaintiff, as he walked west, was in a place of safety and did not come into danger until he got close enough to the track to be struck by the end of the pilot beam. It is true, the evidence shows there was a path alongside the track which was four feet from the south rail. It is also true that plaintiff says he "kept pretty close to" this path as he went west. Now, as long as plaintiff's body was fully four feet from the south rail, the pilot beam would not strike him. But the evidence was that this pilot beam extended out beyond the rail some two feet and six, eight, or ten inches. Therefore, if plaintiff was in a path four feet from the rail, there would be a distance of from fourteen to eighteen inches between the center of this path and the end of the pilot beam. This is not making any allowance for the swaying of the engine, as the testimony shows it would do when traveling on a switch, and sway more as the speed increased. But without taking into consideration any swaying of the engine, this space of from fourteen to eighteen inches is too narrow for plaintiff's body to move in with safety as he walked along the path, even if the path was in the clear as a mathematical proposition. A slight swaying of his body, a short step or movement to one side, and plaintiff would be in reach of the end of the pilot beam. This margin was too narrow for the man on the pilot to consider plaintiff as being in *a place of safety* even if the path was four feet from the rail and the pilot beam would clear at that distance. Plaintiff, with his back

to the engine and walking in the same direction it was
going so close to the reach of danger and unaware of
its approach, cannot be said to be in a place of safety
so as to clearly and conclusively excuse the man on the
pilot from the duty of warning him. And if he cannot
be clearly and conclusively excused from that duty, it is
for the jury to say whether he acted as a reasonably
prudent man would have done under the same circum-
stances. If a reasonably prudent man, exercising ordi-
nary care, would have warned him and could have done
so in time, then the man on the pilot was negligent in
failing to do so, and, in that case, defendant would be
liable under the humanitarian rule. Whether the man
on the pilot acted as an ordinarily prudent man under
the circumstances and whether he had time to act, were
questions, therefore, for the jury to determine, and
cannot be decided by us as matter of law. The helper
on the pilot had no right to think plaintiff was aware of
the approach of the engine. It was ringing no bell,
blowing no whistle, and giving no warning. Plaintiff
was not giving the slightest manifestation that he
knew the engine was coming. He was unconcernedly
moving with his back to the engine so close to the line
of danger that any moment would put him clearly with-
in its reach, and, if that *should* happen, it would then
be *too late* to warn him. Under these circumstances
was it not a question for the jury to say whether the
helper on the pilot acted as an ordinarily prudent man
would have done? His duty to warn did not lie dormant
until he actually *knew* plaintiff was within actual reach
of the pilot beam. That duty arose as soon as he had
sufficient notice to put a reasonably prudent man on the
alert. He must then take such precautions as a prudent
man would take under similar circumstances. As said
by Judge Bond (then on the St. Louis Court of Appeals)
in Klockenbrink v. St. Louis, etc., R. Co., 81 Mo. App.
351, l. c. 356, quoting from 1 Shearman & Redfield on
Negligence (5 Ed.), sec. 99: "It is not necessary that

the defendant should actually know of the danger to which the plaintiff is exposed. It is enough if, having sufficient notice to put a prudent man on the alert, he does not take such precautions as a prudent man would take under similar notice. This rule is almost universally accepted.'' This ruling was affirmed by the Supreme Court in the same case. [See 172 Mo. 678, l. c. 686-9.]

Plaintiff was not a track laborer. He was, however, employed to rivet stove pipe at or near the track. He was told to prepare for that kind of work. In doing this he walked alongside of and near' to the track to get the price of iron in question. He was, therefore, a licensee by invitation and as such entitled to notice of the movements of trains. [Nelson v. Wabash R. Co., 132 Mo. App. 687.] Under the facts and circumstances the jury could rightfully find that the hostler-helper on the pilot saw plaintiff in such a situation that it became his duty, as a reasonably prudent man, to warn him of danger, and that he saw him thus in time to have avoided the injury had he warned him. This being so we are not authorized to disturb the verdict on the ground that under the evidence plaintiff is not entitled to recover.

The case, however, will have to be reversed and remanded because of the instructions. As we have hereinabove shown, plaintiff is not entitled to recover because of defendant's negligence in operating the engine at a speed in excess of eight miles per hour because that negligence was neutralized, so to speak, by plaintiff's contributory negligence in approaching the track without looking. Even if plaintiff's contributory negligence was a question for the jury, the instructions should have covered that issue. But the only ground upon which plaintiff can recover, if at all, is for failure of defendant to obey the humanitarian rule. The instructions, however, authorized the jury to find for plaintiff upon *either* ground of negligence. And instruction.

number 2 does not tell the jury what facts they should find in order to determine whether the operatives of the engine were guilty of negligence in failing to warn plaintiff. [Hinzeman v. Missouri Pacific Ry. Co., 182 Mo. 611, 1. c. 624; Mather v. Metropolitan Street Ry. Co., 166 Mo. App. 142, 1. c. 149.]

The case is, therefore, reversed and remanded for a new trial. All concur.