R. C. SETHMAN, Respondent, v. UNION DEPOT BRIDGE and TERMINAL RAILROAD COMPANY, Appellant.

**Kansas City Court of Appeals, December 1, 1919.**

1. **APPEAL AND ERROR:** Assignment of Error in Motion for New Trial. An assignment in the motion for new trial that "the court erred in instructing the jury as requested by the plaintiff" is now sufficient to preserve the alleged errors, in giving such instructions, for review.

2. **NEGLIGENCE:** Humanitarian Rule: Instruction. In an action based upon the humanitarian rule an instruction, which, after embodying the other necessary elements is concluded by a direction that under the facts detailed the verdict should be for the plaintiff if such facts were found, "even though you believe the plaintiff to have been guilty of negligence in getting into such situation of peril," is not open to attack.

3. ————: ————: Contributory Negligence. Instructions which embody the element of plaintiff's contributory negligence as a defense to an action based on the humanitarian rule are properly refused.

Appeal from Jackson Circuit Court.—*Hon. Wm. O. Thomas,* Judge.

AFFIRMED.

*Rogers & Yates* for respondent.

*Kenneth Mc. DeWeese* for appellant.

TRIMBLE, J.—Plaintiff's automobile, while upon defendant's electric street railway tracks, on the Armour Bridge across the Missouri river at Kansas City, was run into and injured by one of defendant's street cars coming from behind and colliding with it. He brought this suit to recover the damages done to the automobile. The jury returned a verdict for plaintiff, upon which judgment was rendered and defendant has appealed.

As submitted, the case was bottomed upon the humanitarian rule, and the issue the jury was called upon to decide was whether, while said automobile (being operated by plaintiff's brother) was upon the track and in a perilous situation with the diver oblivious of the danger, the operator of the street car knew, or by the exercise of ordinary care could have known, of such perilous situation and that the driver was unaware thereof, in time by the exercise or ordinary care and with due regard to the safety of the passengers, to have stopped or slackened the speed of the car and thereby avoided striking said automobile. Of course, in the instruction, all the necessary elements of a cause of action based on the humanitarian rule were left to the jury to decide, though in the way we have stated it above, it might appear as if some of them were assumed.

The defendant's instructions 4, 7, 9 and 11 were properly refused since every one of them embodied the element of plaintiff's contributory negligence as a defense to the cause of action resting on the humanitarian rule. Contributory negligence is not a defense in that kind of a case. Of course, if the plaintiff's chauffeur wantonly drove into danger or care-

lessly drove upon the track so closely in front of the on-coming car that the motorman did not have reasonable time in which to become aware of the automobile's presence and, by the exercise of ordinary care and with due regard to the safety of those in his charge, to avert a collision then there can be no liability. But the refused instructions above mentioned did not submit issues applicable to plaintiff's cause of action but unqualifiedly made plaintiff's contributory negligence, stated generally, a complete defense thereto. To have given such instructions in a case where the cause of action relied upon was a violation of the humanitarian rule, would have been error.

The trial judge's conclusion as to the weight of the evidence is shown by the judgment and the disposition made of the motion for new trial. The record does not in any manner show that the trial judge was convinced that a new trial should be granted and refused to perform his duty and consequently overruled the motion therefor. Even if the remarks of the trial judge could be considered by us, they show nothing more than that he had some doubts as to what he should do upon the defendant's demurrer to the evidence and motion for new trial, but finally had resolved those doubts in favor of the plaintiff.

This brings us to the final and only question in this appeal and that is whether there is any substantial evidence to support plaintiff's cause of action, or, to state it a little more closely, whether it appears conclusively, and as a matter of law, that plaintiff's automobile went upon the track so closely in front of the street car that the motorman did not have reasonable time to avoid the collision after he saw or should have seen the danger.

The upper deck of defendant's bridge is for the accommodation of electric street and interurban cars and also for the ordinary vehicles of road and street traffic, such as wagons, trucks, buggies and automobiles.

The middle portion of this deck is occupied by double electric street car tracks, they running between the trusses, which in the   portion of the bridge over the stream itself, rise above the upper deck and, upon the cantilever principle, help support the bridge in the spans over the river.  A traffic way, for the ordinary street and road vehicles, lies on each side of this middle portion occupied by the tracks and outside of the trusses, the way on the west being for. south-bound travel and the one on the east being for the north-bound traffic.  The upper deck is on a level with the street at the south end of the bridge, which street level is on the top of the bluffs on the south. side of the river, and the south end of the bridge proper begins at the edge of the bluffs.  The land on the north side of, and for some distance next to, the river, is on a much lower level, and hence a long approach is required until the north end of the bridge proper is reached.  The center or middle portion of this north approach is also occupied by the street car tracks with the traffic ways on each side.  The floor of the traffic ways and of the car tracks on the bridge proper and the approach are upon the same level relatively considered, and automobiles are permitted to go upon this middle portion occupied by the tracks in going over the bridge proper and this track space at the "throat" or south end of the bridge proper near the south toll house and passing along over the bridge between the trusses and thence over the approach till the north end of the north approach was reached where at the "throat" the north-bound automobiles would diverge slightly to the east, through an open space for that purpose, on to the  east or north-bound traffic way again and thence on north along the roadway.  The south-bound automobiles on the west traffic way would enter upon the middle or track portion of the bridge at said "throat" at the north end of said approach, diverging slightly to the east through a similar opening on the west

side and opposite the one above mentioned on the east side.

The north toll house was not far from the north end of the trusses and from this north toll house northward on the approach to the bridge, for a distance of about 1250 feet, the traffic ways are separated from the middle or car track space by a fixed concrete guard rail about six inches high and six inches wide.

About 11 o'clock in the morning of July 26, 1917, plaintiff's automobile, driven by plaintiff's brother, stopped at the south toll house, paid the tolls, and went on north upon the north or east traffic way. He did not enter upon the car track space. While thus driving on the east traffic way and between the two toll houses, he passed the street car which afterwards collided with him, it also proceeding northward. After the automobile passed the north toll house, the driver thereof kept on in the east traffic way until he overtook a large transfer wagon which was too wide to allow the automobile to pass. Young Sethman, the driver, therefore turned the automobile to the left passing over the guardrail on to the car track space for the purpose of going on north to the place where at the "throat" he would diverge again slightly to the east and regain the east traffic way. It was while on this middle portion or car track space that the street car, Sethman had passed on the bridge, struck and injured the automobile.

We have carefully read and studied the record and are convinced that we are not justified in saying there is no substantial evidence to support the finding that after the motorman saw or should have known the danger he had reasonable time to have averted the danger and failed to exercise reasonable care to do so. That when plaintiff's driver passed the street car on the bridge it was going at a moderate gait, one that enabled the automobile to easily pass the car; that when the driver started over into the street car space he

looked back and saw the car at a distance which he and another man, following in another automobile on the east traffic way and near the street car, estimated to be about 300 or 400 feet; that thinking he had ample time to go upon said track and continue on out of the way, plaintiff's driver, without stopping, went on over into that space; that after he had gotten into it and had put his automobile straight with the tracks, a companion in the back seat warned him of the approach of the car and he started up as best he could, going in the direction the car was going, but after going a short distance the street car overtook and struck the rear end of the automobile shunting it forward ahead of the car and doing the damage complained of. According to the evidence in plaintiff's behalf, the motorman at no time after the automobile started into the car track space made any effort to slacken speed or stop the car until after the automobile was struck and then it stopped within a very few feet. When the automobile started upon the tracks the street car was evidently going much faster than when plaintiff's automobile passed it back on the bridge proper. The motorman knew the speed he was then going at, and the space between the car track and the traffic way was so slight that the moment the automobile started over into the car track space the automobile was in danger if the car reached that spot in time. We cannot say that, conclusively, the motorman had no better means of seeing and realizing the danger than did the driver of plaintiff's automobile. The plaintiff had passed the car easily going at one gait and did not realize it was now going at another. The motorman, however, did know this. Besides, the driver of the automobile coming along the traffic way and not far behind the street car feared the car would overtake and strike plaintiff's automobile and stood up in his car to watch results. There was nothing to impede the view of the motorman as plaintiff's automobile went over into the car track space since the course was straight-

away and there were no trusses between the traffic way and the car track space since they were long since passed. Plaintiff had evidence tending to show that a car of the character the motorman was driving could under the circumstances then existing, and with safety to his passengers, have, been stopped in 50 feet. The motorman says it required 250 feet, but it was, in fact, made to stop in very much less than that distance even though, according to plaintiff's evidence, no attempt was made to stop until after the collision occurred. The motorman, however, explains this by saying the impact of the automobile helped the car to stop. The motorman admits in his testimony that the automobile was 90 or 100 feet away when he saw it start over into the car track space. So that he had, not only the time it took to go this distance but also the distance the automobile ran after it got into the car track space and before it was struck, in which to act in order to avert the collision. And it must be remembered that the automobile was going the same way the car was and was increasing its speed as fast as possible as soon as the driver awoke to the danger. Hence, even a slackening of the speed of the car would have enabled the automobile time enough to have raised sufficient speed to have gotten on out of the way. Under all these circumstances, we are clearly without authority to say there was no evidence from which the jury could find a case for plaintiff. [Woodis v. United Railways Co., 203 S. W. 489; Taylor v. Metropolitan St. Ry. Co., 256 Mo. 191, 213, 214; Ingino v. Metropolitan St. Ry. Co., 179 S. W. 771; Williams v. Kansas City Elevated Ry. Co., 149 Mo. App. 489; Aqua Contracting Co. v. United Rys. Co., 203 S. W. 483; Dahner v. Metropolitan St. Ry. Co., 136 Mo. 443.] The fact that there is some vagueness and uncertainty as to the place on the long approach where the collision occurred and some difference of opinion as to where it did occur does not justify us in making any different

ruling, since that does not conclusively destroy plaintiff's case but is a question which, like the others, the jury must decide.

The judgment must be affirmed and it is accordingly so ordered. All concur.


## ON REHEARING.


BLAND. J.—At the time of the delivery of the foregoing opinion the Supreme Court had not handed down its opinion in the case of State ex rel. United Railways of St. Louis v. Reynolds, 213 S. W. 782, overruling the cases cited in the original opinion herein in support of the statement made therein that this court was without power to consider the alleged errors complained of in the instructions given for plaintiff, for the reason that the assignment of error, wherein plaintiff's instructions were mentioned in the motion for new trial, was not sufficiently definite to preserve the question so that it might be raised in this court. The motion for a rehearing was sustained on account of the said action of the Supreme Court in the case of United Railways v. Reynolds, supra, and for no other reason. However, upon further consideration of the case we adhere to the foregoing opinion of TRIMBLE, J., handed down when the case was originally submitted.

The only instruction of plaintiff that defendant complains of is plaintiff's instruction No. 1, which reads as follows:

"The court instructs the jury that if you find and believe from the evidence that the defendant operates a system of electric railways between Kansas City Mo., and north Kansas City in Clay County, Missouri, and that said system of electric railways runs over the bridge known as the Armour-Swift-Burlington Bridge between Kansas City, Missouri, and North Kansas City, Missouri, and that upon said bridge are

streets for vehicle traffic much used by the public for ordinary purposes, if you so find, and if you further find and believe from the evidence that on or about the 26th day of July 1917, the plaintiff was the owner of the automobile mentioned in evidence and that said automobile was at said time being driven and operated upon and over said bridge by R. L. Sethman, if you so find, and that at said time and place the said automobile was driven and operated onto the railway tracks used by the defendant on said bridge and in a position of peril and danger because of the approach of the street car mentioned in evidence, if you so find, and if you further find that the driver of said automobile was oblivious to the peril and danger because of the approach of said street car upon said tracks, and if you further find that the defendant, through its agents, servants and employees, operating said car upon said track at said time and place knew or by the exercise of ordinary care could have known of the perilous stituation of plaintiff's said auto and that plaintiff's driver was unaware of said danger, if you so find, in time to have enabled said agents, servants and employees of defendant thereafter, by the exercise of ordinary care and with due regard to the safety of the passengers on said car, to have stopped said car or slackened the speed thereof, and to have thereby avoided striking and injuring plaintiff's said automobile, and negligently failed to do so, if you so find, and that by reason of such failure to stop said car or slacken the speed thereof, plaintiff's said automobile was struck and injured, then your verdict must be for the plaintiff and against the defendant, and this even though you believe the plaintiff to have been guilty of negligence in getting into such situation of peril.''

It is contended that the instruction is erroneous by reason of the latter part thereof, to-wit, ''then your verdict must be for the plaintiff and against the defendant, and this even though you believe the plaintiff

to have been guilty of negligence in getting into such situation of peril.'' This form of instruction in a last chance case has been so long approved that the instruction is no longer open to question or attack. [Kinlen v. Railroad, 216 Mo. 145, 160, 161, 162; Mather v. Railroad, 166 Mo. App. 145, 150; Strother v. Dunham, 193 S. W. 882, 885, 886.]

The judgment is affirmed. All concur.